**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Case No. 05-202-01 (JR) |
| | : | |
| CLIFTON JAMES CURTIS | : | |
| | : | |
| Defendant. | : | |

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**
**TO SUPPORT DISQUALIFICATION OF BRIAN MCDANIEL AS**
**COUNSEL FOR DEFENDANT CLIFTON CURTIS**

The United State s of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following proposed findings of fact and conclusions of law in support of the Court's decision to disqualify Brian McDaniel, Esq., as counsel for defendant Clifton Curtis.

**I.    PROPOSED CONCLUSIONS OF LAW**

      A.    <u>The Sixth Amendment's Guarantee Of Effective Assistance Of Counsel Demands Representation That Is Not Burdened By Conflicts Of Interest.</u>

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Supreme Court has recognized that "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988). To satisfy this aim, a defendant's right to choose his own counsel is limited by several considerations. *Id.* Most relevant among these considerations to the case at bar is the

judicial interest ensuring that a defendant's representation is free from conflicts of interest. As the Court noted in *Wheat*, "[n]ot only the interest of a criminal defendant but the institutional interest in the rendition of just verdicts in criminal cases may be jeopardized by" these conflicts. *Id*. at 160. Consequently, the assistance of counsel guaranteed to a defendant by the Sixth Amendment must be "untrammeled and unimpaired" by conflicts of interest. *Holloway v. Arkansas*, 435 U.S. 475, 482 (1978). *See also Derrington v. United States*, 681 A.2d 1125, 1133 (D.C. 1996) ("Encompassed within the Sixth Amendment's guarantee of effective assistance of counsel is the right to representation by counsel whose loyalty is undiluted by conflicts of interest.").

A conflict of interest arises when a defense attorney is required to make a choice advancing his own interests, or the interests of another client, to the detriment of the defendant. *United States v. Bruce*, 89 F.3d 886, 893 (D.C. Cir. 1996). "It is a competition between these interests, rather than some independent failure of the attorney, that gives rise to the conflict." *Id*. The danger with joint representation of conflicting interests is that it may prevent an attorney from zealously advocating on behalf of his client. *Holloway*, 435 U.S. at 489-90. In *Holloway*, the petitioners were three co-defendants represented by the same public defender at their trial for robbery and rape. *Id*. at 476-77. Defense counsel twice moved to have the court appoint separate counsel for the defendants because of a potential conflict of interest and because if the defendant's opted to testify, he might not be able to cross-examine them. *Id*. at 477-78. The trial court denied both of the defense's motions and maintained that there was no conflict. *Id*. at 477, 479. In its opinion in *Holloway*, the Supreme Court provided a laundry list, that is by no means exhaustive, of examples of what defense counsel may have been prevented from doing by virtue of the conflict:

2

> It may well have precluded [him] . . . *from exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution* . . . . [A] conflict may also prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another.

*Id*. at 490.  Because any of these scenarios would compromise an attorney's ability to represent his client, the Court held that the trial court's denial of the defense's motions deprived the defendants of assistance of counsel.  *Id*. at 484 (emphasis added).

_____The potential for a conflict of interest is heightened when the same attorney represents two or more members of a narcotics conspiracy, regardless of whether those members are simultaneously standing trial as co-defendants, because the prosecution of the conspiracy may entail the testimony of one conspirator against another or the use of information obtained from a cooperating conspirator against his co-conspirator.  An analogous situation arose in *Derrington v. U.S.*, 681 A.2d 1125 (D.C. 1996), where Derrington's attorney also represented a member of a criminal organization, the R Street Crew, against which Derrington may have been a government informant.  *Derrington*, 681 A.2d at 1127.[1]  Defense counsel argued that a potential conflict existed because Derrington might use his informant status as a bargaining chip to help in the case against him.  *Id*. at 1128.  The D.C. Court of Appeals found that Derrington's status as an informant against the R Street Crew, coupled with defense counsel's representation of a member of the Crew, created a conflict of interest, regardless of whether the government actually planned to call Derrington as a witness in its

---

[1] While decisions of the District of Columbia Court of Appeals are generally only advisory in the federal courts of this District, this opinion carries unusual weight since it is written by the Court that supervises the practice of law by members of the District of Columbia Bar.

prosecution of the R Street Crew. *Id*. at 1134.

_____The principles behind the Sixth Amendment's guarantee of assistance of counsel, and the precedents set by the Supreme Court and followed in the Circuit, demand that representation of defendants be unencumbered by conflicts that may hinder an attorney's ability to advocate on behalf of his client. As the Court stated in *Wheat*, a trial court must recognize a presumption in favor of a defendant's counsel of choice, "but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." *Wheat*, 486 U.S. at 164.

_____Based on the foregoing, there can be no doubt that Mr. McDaniel's representation of the defendant presents a conflict of interest. The record reflects, and there has been no dispute, that persons against whom the defendant may have knowledge are also represented by Mr. McDaniel. As a consequence, for the security of the United States' investigations, and for the safety of anyone cooperating with the United States, including law enforcement officers and third parties, the United States cannot compromise the confidentiality of those investigations in discussions with the defendant in the presence of his attorney. Furthermore, since the government cannot conduct conversations with the defendant without his attorney's presence, Mr. McDaniel's representation of the defendant constitutes a bar to any discussions with the defendant and a bar to any benefit that the defendant might receive from such discussions.

      B.    <u>Trial Judges Have Substantial Latitude In Determining If A Conflict Of Interest Exists In Rejecting A Defendant's Waiver Of The Conflict, And In Investigating Potential Conflicts.</u>

_____If a trial judge is alerted by objection of one of the parties that the defendant's representation is burdened by an actual or a potential conflict of interest, the judge has an independent duty to

investigate the conflict and to "ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment." *Wheat*, 486 U.S. at 161.  A defendant may seek to waive the conflict and proceed with the counsel of his choosing, but the right of a defendant to waive objection to a conflict is not absolute. Waivers do not cure any of the problems enumerated above that may be created by multiple representation; they simply ensure that a defendant will not, and cannot, prevail upon a claim of conflict. *Id*. at 160.  Moreover, a waiver does not address the interests of the court and the public with respect to the results of the prosecution of the defendant.

Consequently, the Supreme Court has declared that,

> the district court must be allowed *substantial latitude* in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses.

*Id*. at 163 (emphasis added).  This broad discretion granted to the District Court by the opinion in *Wheat* allows judges to disqualify the attorney chosen by the defendant when it appears that the perils posed by multiple representation will jeopardize the defendant's Sixth Amendment rights.  The substantial latitude granted to trial judges with respect to disqualification of attorneys is, in part, designed to ensure a fair trial for the defendant, but it is also based on broader and more fundamental concerns about the administration of justice.  Inadequate representation of a defendant, including representation that is tainted by the appearance of a conflict,

> not only constitutes a breach of professional ethics and invites disrespect for the integrity of the court, but it is also detrimental to the independent interest of the trial judge to be free from future attacks over the adequacy of the waiver or the fairness of the proceedings in his own court and the subtle problems implicating the defendant's comprehension of the waiver.

*Id.* at 162 (quoting *United States v. Dolan*, 570 F.2d 1177, 1184 (3d Cir. 1978)). Additionally, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted with the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Id.* at 160.

A judge's duty to investigate a conflict of interest arises when the judge becomes aware, either by motion or notice of a party or by his own observation, of facts and circumstances that implicate a potential conflict. *United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004). *See also Holloway*, 435 U.S. at 484 (judge's failure to "appoint separate counsel or to take adequate steps to ascertain whether the risk [of a conflict] was too remote to warrant separate counsel" deprived petitioners of assistance of counsel). The Second Circuit has stated that "[a]n actual conflict of interest exists when the attorney's and the defendant's interests 'diverge with respect to a material factual or legal issue or to a course of action,' or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." *Jones*, 381 F.3d at 119 (quoting *United States v. Feyer*, 333 F.3d 110, 116 (2d Cir. 2003)). Similarly, a potential conflict exists "if the interests of the defendant *could* place the attorney under inconsistent duties in the future." *Id.* (quoting *United States v. Kilti*, 156 F.3d 150, 153 n.3 (2d Cir. 1998)) (emphasis in original). The trial judge is the person best suited to evaluate the facts and circumstances of a case and determine if there is an actual or potential conflict of interest that will affect the defendant's representation. *Wheat*, 486 U.S. at 164. This realization is reflected in the substantial latitude granted to judges by the Supreme Court to investigate conflicts and, when the interests of justice warrant, disqualify defense counsel.

## II.    PROPOSED FINDINGS OF FACT

At a status conference held on June 22, 2005, the government brought the Court's attention to a potential conflict of interest with respect to attorney Brian McDaniel's representation of defendant Clifton Curtis.[2] (Tr. I, 2.) The government advised the Court that a serious conflict might result from Mr. McDaniel's representation of other parties about whom the government would like to speak to Mr. Curtis and whose activity is collateral to the charges against Mr. Curtis in the instant case. In particular, the government has reason to believe that Mr. Curtis has information about individuals who are either past or present clients of Mr. McDaniel. The government would not be able to discuss this information with Mr. Curtis in the presence of Mr. McDaniel because of Mr. McDaniel's attorney-client relationship with those other individuals and the government would not be able to discuss this information with Mr. Curtis in the absence of counsel because Mr. Curtis is a represented party. Insomuch as Mr. Curtis would not be able to cooperate with the government by participating in these discussions, Mr. Curtis would not be eligible for certain sentencing considerations that may result from a defendant's providing of substantial assistance to the government. First, the government would not be able to file a motion for a § 5K1.1 departure from the Sentencing Guidelines. Second, the government would not be able to file a motion pursuant to 18 U.S.C. § 3553(e) permitting a downward departure from the statutory mandatory minimum,

---

[2] The government will refer to several transcripts of proceedings in this matter. The transcripts on the following dates will hereinafter be referred to as follows:

June 22, 2005 (open court) - Tr. I
June 22, 2005 (sealed proceeding) - Tr. IA
July 6, 2005 - Tr. II
July 13, 2005 (open court) - Tr. III
July 13, 2005 (sealed proceeding) - Tr. IIIA
July 26, 2005 - Tr. IV

which in this case is ten years.  (Tr. I, 4.)  When Mr. McDaniel advised the Court that he had discussed these matters with Mr. Curtis and had also discussed the safety valve, the government advised the Court that even if Mr. Curtis chose to waive the conflict of interest, the government did not believe that Mr. Curtis could qualify for consideration without a full and candid debriefing as required by the provisions of § 3553(e).  (Tr. I, 5.)

The Court met with the government, Mr. McDaniel and Mr. Curtis in a separate, closed meeting during the June 22, 2005, conference to further explore the nature of the conflict and the consequences of the conflict.  The Court explained to Mr. Curtis that there was a potential conflict of interest because Mr. McDaniel either presently represents or has represented in the past other individuals who are at least collaterally connected to the crime with which Mr. Curtis is charged. (Tr. IA, 2.) The Court advised Mr. Curtis that it would consequently be improper for Mr. McDaniel to represent him unless Mr. Curtis agreed to completely waive the conflict.  (Tr. IA, 3.) The Court further advised Mr. Curtis that even if he did waive the conflict, the government might not be willing to file a motion for a downward departure in sentencing, insomuch as such a motion is contingent on a defendant's provision of substantial assistance to the government.  *Id*.  Moreover, the Court stressed that while neither the government nor the Court sought to interfere with the defendant's choice of representation, the decision to keep Mr. McDaniel as counsel would prevent the government from recommending a reduced sentence.  (Tr. IA, 4.)  The Court advised Mr. Curtis that it could not depart below the ten year mandatory minimum sentence unless the government asked the Court to do so.  *Id*.

Mr. McDaniel raised the issue that if the government refused to file a motion for a sentencing departure, Mr. Curtis would still be eligible for application of the safety valve, § 5(C)1.2 of the

8

Sentencing Guidelines, because he only has only prior misdemeanor offense. (Tr. IA, 5.) The government advised the Court that it would oppose the safety valve on the grounds that the defendant and the government would not be able to engage in a full and candid debriefing. (Tr. IA, 7.) The safety valve provision, found at § 5C1.2 of the Guidelines and 18 U.S.C. § 3553(f), allows the court to impose a sentence in accordance with the Guidelines without regard for the statutory mandatory minimum if five conditions are met. Even if the first four requirements are met by the facts of this case, the Court would not be able to invoke the safety valve because the conflict of interest presented by Mr. McDaniel's representation of the defendant would prevent the defendant from engaging in a full and candid debriefing with the government. In particular, subsection (a)(5) requires that the defendant truthfully provide "to the Government *all* information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . ." § 5C1.2(a)(5) (emphasis added). Mr. McDaniel asserted that the requirement of subsection (a)(5) was met because Mr. Curtis had "provided *some* substantial information already about his involvement in this case." (Tr. IA, 5 (emphasis added)). In making this assertion, Mr. McDaniel misstated the requirement embodied in subsection (a)(5), which requires the defendant to share with the government *all*, not just *some*, information that he has about the "the offense or offenses that were part of the same course of conduct or of a common scheme or plan." § 5C1.2(a)(5). Moreover, it is the government that will determine if a defendant has shared all the information that he possesses on a given topic. Because the government does not believe that Mr. Curtis was sufficiently forthcoming in his initial debriefing, and because Mr. McDaniel's representation of the defendant would preclude any future debriefings, the government made clear

that it would oppose the safety valve.[3]  (Tr. IA, 7.)  The question of the applicability of the safety valve was again addressed in the defendant's presence on July 13, 2005, when the government stressed, mainly for the defendant's benefit, that the lack of a full and candid debriefing would make the safety valve "a matter of considerable contest" in this case.  (Tr. III, 8.)

Based on the potential conflict of interest and seeking to accommodate the defendant's chosen counsel, the Court prepared a Waiver of Conflict of Interest and presented it to Mr. Curtis at the July 13, 2005, status conference for his review.  (Tr. III, 2.)  Following Mr. McDaniel's representation to the Court the Mr. Curtis was prepared to sign the waiver, the Court questioned Mr. Curtis about whether he read the waiver in full and whether he understood both its text and its potential consequences.  The relevant portion of the Court's inquiry proceeded as follows:

> THE COURT:  Mr. Curtis, have you read this waiver of conflict of interest?
> MR. CURTIS:  Yes, sir.
> THE COURT:  Have you been over it with your attorney?
> MR. CURTIS:  Yes, sir.
> THE COURT:  Has he been able to answer your questions about it?
> MR. CURTIS:  Yes, sir.
> THE COURT:  Do you think you understand it?
> MR. CURTIS:  Yes.
> THE COURT:  How much education do you have?
> MR. CURTIS:  Seventh grade.
> THE COURT:  Seventh grade?  Are you able to read this by yourself?
> MR. CURTIS:  Most of it.
> THE COURT:  Well, what can't you read?
> MR. CURTIS:  I was saying I've read most of it.  I do think I understand - -
> THE COURT:  Tell me, Mr. Curtis, in your own words what you think this means?
> MR. CURTIS:  Far as I'm passing any, you know, any rights far as telling them
>                    information

---

[3] It should be noted that there are two general areas about which the government would like to speak to Mr. Curtis.  The first of those areas was discussed at some length in sessions in which Mr. Curtis was represented by John Carney, Esq.  The second area was very briefly discussed but was to be discussed at length in subsequent meetings.  Mr. McDaniel's conflict is in the second area which involves persons he represents or had represented in the past.

> THE COURT: I'm sorry. You've got to get closer to the microphone. I can't hear you.
>
> MR. CURTIS: Just passing information to try to lessen my time, and not to give up my attorney.
>
> THE COURT: Tell me again because I don't think I understand that.
>
> MR. CURTIS: I guess passing rights not to lessen my time and not to pass on my attorney.
>
> THE COURT: You're passing on your rights not to lessen your time and not what?
>
> MR. CURTIS: Give up the rights of my attorney, to lose my attorney.
>
> THE COURT: Well, all right. I'm not sure that quite covers it, but let me just try to make double, triple, and maybe quadruple sure you understand it.

(Tr. III, 9-11.) Based on this clear evidence that Mr. Curtis did not fully understand the content and full effect of the waiver, the Court once again attempted to explain to Mr. Curtis why the government had raised the issue of a conflict and what consequences may stem from Mr. McDaniel's continued participation as defense counsel. (Tr. III, 11.) Specifically the Court reiterated to Mr. Curtis that, because of the conflict,

> the government's position, which they're entitled to take, is they don't want to sit down and talk about this case with you and Mr. McDaniel. They can't talk with you unless Mr. McDaniel's present, and so because they can't talk to you about the case, there is no way the government can give you a break on sentencing. There's no way they can do it. They won't do it. They refuse to do it, and I can't make them do it. Do you understand?

(Tr. III, 11-12.) Mr. Curtis responded that he understood. *Id*.

The Court also discussed sentencing considerations with the defendant. Mr. Curtis acknowledged that he was facing a mandatory minimum sentence of ten years and a Guideline range of 121 to 151 months. (Tr. III, 12-13.) Mr. Curtis also stated that he understood the government would resist application of the safety valve even if he met the requirements for the safety valve. (Tr. III, 13.) To further emphasize the point that there might be consequences if Mr. Curtis waived the conflict and proceeded with Mr. McDaniel, the Court cautioned: "[Y]ou're entitled to your choice

11

of counsel, Mr. McDaniel, but the point is that in this case your choice of Mr. McDaniel could cost you big time." *Id*. In response to this warning, Mr. Curtis gave further indication that his waiver might not be voluntarily induced when he voiced concern for the safety of his family if he was to cooperate with the government. (Tr. III, 13-14.)

Mr. Curtis' responses to the Court's inquiry raised the possibility that his waiver of the conflict was not made knowingly and voluntarily and that Mr. Curtis might need additional assistance in understanding the waiver and its potential consequences. In recognition of these possibilities, the Court indicated that it was not ready to either accept or reject the waiver. (Tr. IIIA, 3.) The Court then raised the possibility of engaging the services of a non-conflicted attorney to speak to Mr. Curtis about his security issues and about the waiver and to provide Mr. Curtis with an independent evaluation of the situation. (Tr. IIIA, 3-4.) The Court further stated that appointment of temporary counsel for the defendant would not constitute impermissible interference with the attorney-client relationship as long as the appointment is made at the Court's suggestion, under a sealed proceeding in open court and in the presence of defendant's present counsel. (Tr. IIIA, 5-6.) Mr. McDaniel acknowledged that the Court's suggestion made sense, but informed the Court that Mr. Curtis did not wish to speak to another attorney and that he was worried about the implications of cooperating with the government. (Tr. IIIA, 6-7.) The Court voiced concern about Mr. Curtis' position and stated that it was difficult for the Court to accept that Mr. Curtis, through the waiver, was "throwing away the chance to at least learn about what might be possible to reduce" his sentence. (Tr. IIIA, 8.) The Court indicated that it would not be willing to accept the defendant's waiver until it was satisfied that everything possible had been done to ensure that Mr. Curtis understood his situation. *Id*. Upon the Court's suggestion, Mr. Curtis agreed to meet with attorney

12

James Rudasill, Esq., for this limited purpose.  (Tr. IIIA, 11.)

Mr. Rudasill was appointed as temporary counsel for Mr. Curtis on July 15, 2005, and Mr Curtis and Mr. Rudasill subsequently met for several hours to discuss the conflict of interest and the defendant's willingness to waive the conflict.  (Tr. IV, 2.)  At the next status hearing on July 26, 2005, Mr. Rudasill addressed the Court about these discussions.  *Id*.  Mr. Rudasill, an extremely experienced member of the CJA panel, indicated that he reasonably believed Mr. Curtis possessed information that, if he had conflict-free representation, would qualify him for sentencing departures based on substantial assistance pursuant to § 5K1.1 of the Guidelines and § 3553(e).  (Tr. IV, 3.) The government similarly stated that it reasonably believed Mr. Curtis possessed information that could result in such a departure.  (Tr. IV, 15.)  Mr. Rudasill informed the Court that Mr. Curtis was willing to cooperate with the government (Tr. IV, 6), but Mr. McDaniel disputed this point and maintained that Mr. Curtis would not be willing to cooperate.  (Tr. IV, 19.)  The Court stated that its assessment of the situation was that Mr. Curtis believed that he has information useful to the government and that Mr. Curtis would be willing to cooperate with the government regarding that information.  (Tr. IV, 22.)  The Court further found that Mr. Curtis had not been able to explore avenues of cooperation with the government because of the government's refusal to have substantive discussions with him while he is represented by conflicted counsel.  *Id*.

Consequently, the Court rejected the defendant's waiver of the conflict and disqualified Mr. McDaniel from representing him.  (Tr. IV, 23-24.)  The Court found that the interests of justice would be served by such a disqualification.  Specifically, the Court stated that,

> The interests of justice include not sending people to prison for excessive lengths of time if there is some way that it can be avoided. The interests of justice include providing the government with

13

> whatever tools it can get to solve crime and punish criminals.  The interests of justice include having and fostering a confidence in the community that witnesses can step forward and testify and be protected.  And the interests of justice include giving criminal defendants competent counsel of their choice in so far as that can be accommodated with the other elements of the interests of justice.

*Id.*

The interest of justice, when combined with the need for public confidence in the outcome of judicial proceedings and the possibility that Mr. Curtis was not able to make a knowing waiver of his right to conflict-free representation, justified the Court's decision to remove Mr. McDaniel from the case and appoint Mr. Rudasill as counsel for Mr. Curtis.

Based on the precedent set by the Supreme Court in *Wheat*, trial judges may disqualify counsel if there is even the potential for a conflict of interest.  A court has substantial latitude to reject waivers of the conflict offered by the defendant, and deference should be granted to the decision of a judge to disqualify counsel because the judge has the best vantage point from which to observe the facts of the case.  Upon evaluating the potential conflict of interest posed by Mr. McDaniel's representation of defendant Clifton Curtis, the Court will exercise its discretion to reject the defendant's waiver of the conflict and the Court will disqualify Mr. McDaniel.  This decision reflects the Court's due concern for both the defendant's interest in securing adequate representation and the Court's obligation to advance the interests of justice and insure that the public's interest in the correctness and ultimate fairness of the judgments of its courts.

<div style="margin-left:40%">

Respectfully submitted,
KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY

BY:      _____/s/_____

WILLIAM J. O'MALLEY, JR.
EMORY V. COLE
Assistant United States Attorneys

</div>